IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DEWAYNE ANDERSON | § | |
| v. | § | CIVIL ACTION NO. 6:09cv282 |
| J.B. McCALEB, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Dewayne Anderson, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceedings pursuant to 28 U.S.C. §636(c). As Defendants, Anderson named two Longview police officers, Lanie Smith and Brant Smith, and police chief J.B. McCaleb.

An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Anderson said that on December 17, 2008, he was driving in Longview and took a right on Craig Street. A police car behind him turned on its overhead lights, and Anderson drove to an apartment complex, where he jumped out of his car and ran. One police officer chased him on foot, while another tried to cut him off by car. Anderson ran toward the woods behind the home of a person named George Perry. He decided not to run into the woods so he stopped and put his hands up. He then walked back toward Lanie Smith, the officer following on foot.

However, Anderson said, Smith shot him with a Taser gun, knocking him down on his back. Brant Smith then got on top of him and began punching him in the face, saying "why did you run?" Lanie Smith continued to shock him with the Taser gun. He stated that he was shocked with the Taser five or six times, even though he was not resisting, and Brant Smith was punching

1

him with a closed fist. Although Anderson said that he had an iPod device in his hand, he denied pointing it at the officers, and said that he "threw it away," but Brant Smith found it.

Anderson said that the officers then picked him up from the ground. He started complaining that his neck hurt, and Brant Smith slammed him to the ground again. Anderson denied telling medical personnel later that he had fallen. He said that he suffered a sprained knee and a fractured wrist.

Following the evidentiary hearing, McCaleb was dismissed from the lawsuit, and Lanie Smith and Brant Smith were ordered to answer. On December 17, 2010, the Defendants filed a motion for summary judgment. Anderson has filed a response to this motion.

In their motion for summary judgment, the Defendants state that Lanie Smith had just finished a traffic stop in the 500 block of Johnson Street in Longview when he saw a Buick being driven by a person later identified as Anderson, who was not wearing a seatbelt. The temporary tag on the car was not clearly visible. Lanie Smith radioed Brant Smith to initiate a traffic stop. Both of the officers were in police uniforms and driving marked cars.

Brant Smith drove up behind Anderson's Buick and turned on the overhead lights. Anderson turned onto Craig Street and sped up. He then drove to Bronco Street and pulled into the parking lot of the American Fidelity Apartments. Anderson stopped, jumped from his car, and ran behind the apartments. Brant Smith began pursuing him on foot. Lanie Smith drove past the apartments to the area of Old Elderville Road and Johnson Street in an attempt at to intercept him.

Anderson came out on Johnson Street and slowed down, but then began to run when he saw Lanie Smith's patrol car. Lanie Smith got out of his car and began to chase Anderson, giving him loud verbal commands to stop. Brant Smith joined in the chase but was some distance behind. Anderson did not heed the commands to stop.

Instead, the Defendants say, Anderson ran into a back yard and veered toward a wooded area, where he became entangled in the brush. Lanie Smith continued to follow him, commanding him to stop. As he approached, Anderson got up from the ground and faced Smith with

2

an unknown object in his hand. Anderson held his hands to his side, saying that he had done nothing wrong. Lanie Smith pulled out the taser gun and told Anderson to lay down, but Anderson refused. Smith fired his Taser gun at Anderson and Anderson fell over, but still maintained that he had done nothing wrong. Smith observed that Anderson was not responding as though he had been shocked by the Taser, and did not know if both prongs of the Taser had made contact with Anderson

As Brant Smith approached, he could hear Lanie Smith telling Anderson to lay on his stomach, and could see that Anderson was refusing to do so, but was instead trying to stand up. Brant Smith could also see that the Taser had been fired and that Anderson was holding an unknown object in his hand.

Lanie Smith used the Taser again, but it again appeared to have little effect. Brant Smith stepped forward and placed his foot on Anderson's chest to prevent him from getting up. The officers rolled him over and grabbed his hands to place handcuffs on him, and discovered that the item he was holding was an iPod electronic device.

After Anderson was placed in custody, the Defendants say, Lanie Smith located the Taser probes; one was in the front chest area of a jacket which Anderson was wearing, and one was in Anderson's abdomen. The officers picked him up and walked him to the patrol car, and called for emergency medical services and a supervisor to respond to the scene. Anderson told the medical personnel that his neck hurt and that he had been kicked in the face, but he had no visible marks on his head or neck. The medical personnel removed the Taser prong from his abdomen, and Anderson said that he did not want to go to the hospital. The EMS personnel left the scene. Shortly thereafter, Anderson asked Lanie Smith what time it was, and upon being told, stated that he did want to go to the hospital.

The EMS personnel were called back to the scene, and Anderson was taken to the hospital by ambulance. Once there, the Defendants say, Sgt. Spruiell tried to question Anderson, but Anderson was evasive in his answer and changed his story. X-rays showed that Anderson had a

broken finger, of the type known as a "boxer's fracture," but Anderson said that this was an old injury.

The Defendants point out that at the hearing, Anderson acknowledged that he ran from the police, he held an iPod in his hand, and he pleaded guilty to the charge of evading arrest in a vehicle. The medical records showed that Anderson denied "injuries caused by another" and that his head was within normal limits, with no pain or deformities, and no abrasions, lacerations, or swellings.

The Defendants' motion for summary judgment relies upon qualified immunity. They discuss the nature of the qualified immunity defense, and note that determining issues of excessive force require careful attention to the facts and circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. They state that excessive force claims are evaluated for objective reasonableness based on the information which the officers had at the time that the conduct occurred.

Based on these standards, the Defendants argue that they are entitled to qualified immunity. They state that they, as uniformed police officers, were faced with a situation in which an unknown subject fled detention on foot and refused verbal commands to stop and lay down. When Lanie Smith finally caught up with Anderson, he would not lay down and held an unknown object in his hand. A Taser gun proved ineffective, and so Brant Smith used his foot to hold Anderson down until he could be restrained.

The Defendants deny striking or kicking Anderson, and note that the medical records contain no indications that Anderson suffered any injuries commensurate with such blows. The contend that they were in fear for their lives because of the unknown object which Anderson was holding. Under the totality of the circumstances, the Defendants argue, their use of force was reasonable and not excessive.

Next, the Defendants maintain that an objectively reasonable peace officer could believe that the force used, including both the Taser gun and the application of force to hold Anderson on the ground, was lawful. As a result, they state that they are entitled to qualified immunity, and ask that the lawsuit be dismissed.

Anderson's Response to the Motion for Summary Judgment

In his response, Anderson says that he is able to establish the elements of his claim, which are that he suffered a significant injury from a use of force which was excessive to the need. He says that after a chase on foot, which he describes as "short," he tried to surrender by placing both hands in the air but was shot with a Taser. Although Anderson says that he had his hands in the air, he also indicates that he was holding onto his iPod with both hands. He argues that the use of the Taser when he was already trying to surrender was "objectively unreasonable." Anderson says that even if the Defendants thought that his iPod might have been a weapon, the state of the law gave them notice that the repeated use of a Taser on an unarmed arrestee was unconstitutional.

Legal Standards and Analysis

General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated

that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence

indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The fact that a non-movant failed to respond to a motion for summary judgment is not itself a basis for granting that motion; rather, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

## Qualified Immunity

The Defendants argue in their motion for summary judgment that they are entitled to the defense of qualified immunity. This defense applies to claims for monetary damages brought against a government official in his individual capacity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing*

7

Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a §1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

The Supreme Court has said that the right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion, or threat thereof, to effect it. Graham v. Conner, 490 U.S. 386. 396 (1990). In order to prevail on a claim that the force used was excessive, the plaintiff must show that he suffered an injury which resulted directly and only from a use of force which was clearly excessive, and the excessiveness of which was clearly unreasonable under the circumstances. Collier v. Montgomery, 569 F.3d 214, 218 (5th Cir. 2009). This test for reasonableness must consider whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Collier, 569 F.3d at 219.

In Colston v. Barnhart, 130 F.3d 96, 98-100 (5th Cir. 1997), the plaintiff Lorenzo Colston was a passenger in a car pulled over by Officer Barnhart. During the course of the traffic stop, Colston did not answer all of Barnhart's questions honestly and disobeyed ordered by Barnhart and another trooper to get on the ground. Colston forcefully resisted efforts by the officers to gain control of him, and knocked the officers to the ground. While lying on the ground, Barnhart fired a shot at Colston which missed. Colston stepped over Barnhart's legs and began moving away from

him, towards Barnhart's car, in which the officer's shotgun was located. Barnhart fired two more times, striking Colston in the back of his arm and in the buttocks.

Colston filed suit, claiming that Barnhart's actions amounted to excessive force. Barnhart moved for summary judgment on the basis of qualified immunity. The district court denied this motion after concluding that material issues of fact were presented which precluded summary judgment, but the Fifth Circuit reversed this determination.

The Fifth Circuit explained that in determining the reasonableness of the officer's conduct, the courts are not to employ the 20-20 vision of hindslight, and must consider the fact that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.

After reviewing the evidence in the light most favorable to Colston, the Fifth Circuit concluded that Barnhart had no way to know whether Colston intended to flee or to inflict further injury upon the officers. The court explained that "we cannot say that a reasonable officer in Barnhart's place would not have believed that Colston posed an immediate danger of serious bodily harm or death to Barnhart or Langford. As a result, Barnhart's decision to use deadly force was objectively reasonable."

In the present case, Anderson fled from the officers both in his car and on foot. According to his statement, he turned and approached the officers with his hands up, but with an object in his hand. While this object was later identified as an iPod, Anderson offers nothing to rebut the officers' statements that they could not tell what it was; similarly, although he contends that he was trying to surrender, he concedes that he was holding his hands, with the unknown object, in the air, after turning and approaching the pursuing officers. Thus, as in Colston, the Court cannot say that a reasonable officer would not have believed that Anderson posed a danger to them, in light of the fact that he had just fled from them and now appeared carrying an unidentified object in his hand. The force used to subdue Anderson was reasonable under the circumstances.

Anderson alleges that the officers beat and kicked him and that he suffered a sprained knee and a fractured wrist. While it is true that Anderson's sworn pleadings and testimony are summary judgment evidence, the Fifth Circuit has held that a non-movant cannot satisfy his summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007). In Mosley v. White, slip op. no. 09-41091, (5th Cir., December 13, 2010), the Fifth Circuit stated as follows:

> In response to White's motion for summary judgment, as previously explained, Mosley provided the district court with his affidavit and those of his co-inmates and his grievance reports. Although we recognize that the affidavits and reports constitute valid summary judgment evidence, Fed. R. Civ. P. 56(c)(4), we have explained that without more, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" and defeat a motion for summary judgment. Douglass v. United Services. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Similarly, in the present case, while Anderson's sworn pleadings and testimony are summary judgment evidence, he presents nothing more than conclusory allegations, speculation, and unsubstantiated assertions regarding the extent of the force used and the injuries resulting therefrom. The medical records contained within the competent summary judgment evidence show that Anderson's head was within normal limits, without pain, deformities, abrasions, lacerations, or swelling. His chest, abdomen, pelvis, extremities, and back also were listed as being within normal limits, with no pain, bruising, abrasions, or lacerations. Anderson's neck was listed as "abnormal as evidenced by pain in the back of the neck" but there are no objective findings regarding any injuries to the neck. Anderson complained that his neck was sore from where he fell, but the records contain an entry reading "Abuse screen. The patient denies threats or abuse. The patient denies injuries caused by another."

The medical records contain nothing to show that Anderson suffered a sprained knee or fractured wrist; on the contrary, the initial examination of his extremities proved normal. An X-ray showed a fracture of the fifth metacarpal, which is the little finger, but the medical records reflect that Anderson said that this was an old injury. Furthermore, Anderson's head and face were not bruised or swollen, despite his testimony that he was punched several times in the face with a closed

fist "harder than I ever been hit by a closed fist." In light of these medical records which starkly contradict his claims, Anderson's conclusory allegations, speculation, and unsubstantiated assertions concerning alleged injuries amount to no more than a scintilla of evidence in support of his claim that the officers beat, punched, or kicked him, and are thus insufficient to overcome the officers' claims to qualified immunity.[1] *See also* Foxworth v. Khoshdel, civil action no. H-07-03944m 2009 WL 3255270 (S.D.Tex., September 28, 2009, no appeal taken) (conclusory allegations of "painful physical injuries to the gums and mouth" were not supported by objective findings in the medical records and thus could not overcome a motion for summary judgment).

Instead, the records show that Anderson told medical personnel that he fell to the ground as a result of being hit by the Taser gun, and that the injury to his neck resulted from this fall from a standing position. The facts are not disputed that Anderson was shot with a Taser gun; however, one of the barbs from the Taser became embedded in Anderson's jacket, reducing the effectiveness of the Taser.

More pertinently, however, Anderson has failed to show that the use of the Taser gun amounted to excessive force which was unreasonable under the circumstances. As noted above, the record shows that Anderson fled from the police, and that when Officer Lanie Smith approached him, he was carrying an unknown object. At the hearing, Anderson acknowledged that having to chase him "might have caused some concern. I know that any time the person running and a person who chasing them adrenaline gonna rush. They don't know what's going to happen." Even if the injury to Anderson's finger resulted from his fall to the ground, as a result of being hit with the Taser, he has not shown that the use of the Taser was itself unreasonable force. Colston, 130 F.3d at 99 (use of deadly force was objectively reasonable under the totality of the circumstances).

---

[1] At the evidentiary hearing, Anderson denied talking to the doctors or nurses while at the hospital, or saying that no one abused him or that the injury to his finger was an old one. He suggested that the medical personnel "added things to their report as soon as they got there." These are also conclusory assertions which amount to no more than scintilla of evidence, and are thus insufficient to overcome the summary judgment evidence or to carry Anderson's burden of defeating the Defendants' claim to qualified immunity.

Because Anderson has not shown that the Defendants acted in an objectively unreasonable manner based upon the clearly established law at the time of the incident, he has failed to overcome the qualified immunity defense.

Conclusion

The qualified immunity defense has two prongs - whether an official's conduct violated a constitutional right of the plaintiff, and whether the right was clearly established at the time of the violation. If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of the clearly established law. An official's actions must be judged in light of the circumstances which confronted him, without the benefit of hindsight. In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed that his actions were proper. Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted). Once the defense of qualified immunity is invoked, the plaintiff has the burden of proof to rebut it. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).

In this case, the Defendants invoked the defense of qualified immunity in their motion for summary judgment, and thereby shifted the burden to Anderson to rebut it. The competent summary judgment evidence shows that Anderson has failed to do so. Instead, the evidence shows that Anderson fled from the police in his car and then on foot, running behind an apartment complex and into a private yard. He then approached the officers holding an unknown object in his hand. The medical records did not confirm Anderson's account of injuries, nor did they contain any objective findings consistent with his version of the incident. The Fifth Circuit has stated that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" and defeat a motion for summary judgment. Douglass v. United Services. Auto Ass'n, 79 F.3d at 1429. Anderson has failed to meet his burden of overcoming the defense of qualified immunity, and so the Defendants' motion for summary judgment should be granted. It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 42) be and hereby is GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 15th day of February, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE